IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARA REYNOLDS )
c/o 1825 K St., NW, Ste. 750, )
Washington, DC 20006 )
)
    Plaintiff, )    Case No.: _____
)
v. )
)
VBR BREWING CORPORATION )
D/B/A RED BEAR BREWING CO. )
1140 3rd St., NE, )
Washington, D.C. 20002 )
)
    Defendant. )
)

## COLLECTIVE ACTION COMPLAINT

    Plaintiff Sara Reynolds ("Plaintiff"), by undersigned counsel, on behalf of herself and all others similarly situated, alleges as follows:

### NATURE OF THE CASE

1. Plaintiff seeks unpaid wages based on Defendant VBR Brewing Corporation d/b/a Red Bear Brewing Company' ("Red Bear") unlawful practice of permitting management employees to distribute tips to employees who do not customarily receive tips, for keeping tips earned by Plaintiff for itself in order to cover overhead costs, and for retaliating against Plaintiff because she complained to Red Bear about wage violations.

2. Plaintiff worked for Defendant as a bartender in Washington, D.C.

3. Defendant severely reduced Plaintiff's tip income through the inclusion of non-tipped employees in the mandatory tipping pool, namely kitchen cashiers and dishwashers/bussers, in violation of the D.C. Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-

1001, *et seq.*

4. Defendant also violated the DCMWA when it retained 8% of Plaintiff's tips from a work event in order to cover overhead costs from the event.

5. Defendant further violated the DCMWA and FLSA when it retained all of Plaintiff's tips earned when she worked as a Manager on Duty, a position that performs a significant amount of tipped duties.

6. When Plaintiff discussed her concerns of wage violations with her superiors, Defendant took swift, retaliatory actions against Plaintiff by scheduling her to less favorable shifts, ridiculing and disparaging her, and ultimately firing her, in violation of the DCMWA, the District of Columbia Minimum Wage Payment Collection Law ("DCWPCL"), D.C. Code § 32-1301, and the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

7. Defendant also violated the DCWPCL by failing to pay Plaintiff tips owed on the next regular payday or within seven days from the date Defendant fired Plaintiff.

## JURISDICTION AND VENUE

8. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## THE PARTIES

10. Plaintiff was employed by Defendant as a bartender at the Red Bear Brewing Co. restaurant and bar.

11. Defendant Red Bear Brewing Co. is a Delaware corporation with its principal place of business in Washington, D.C.

2

## FACTS

### Background

12. Plaintiff began working for Defendant as a bartender in March of 2019.

13. Defendant is engaged in interstate commerce.

14. Defendant paid Plaintiff a base rate of $9.00 per hour plus tips, distributed in a mandatory tipping pool.

15. Plaintiff, on average, earned several hundred dollars in tips per shift.

16. Elizabeth Cox, manager, made the schedule for the bartenders.

17. Ms. Cox routinely scheduled each bartender, including Plaintiff, to work five to six bartender shifts per week.

### Defendant Violated the DCMWA by Allocating Tips to Kitchen Cashiers

18. Defendant originally split tips between the bartenders, barbacks, and hosts based on a mandatory tip-sharing policy: 75% to the bartenders, 23% to the barbacks, and 2% to the hosts.

19. Defendant opened up the kitchen for food orders in or around August 2019.

20. In late September 2019, Defendant added kitchen cashiers to the tip pool. Defendant subsequently decreased the tips distributed to bartenders by 15%.

21. Defendant updated the tip distributions to the following: 60% to the bartenders, 25% to the barback, 12% to the kitchen cashiers, and 3% to the hosts.

22. Kitchen cashiers should not have been classified as tipped employees.

23. Kitchen cashiers work behind a counter near the bar.

24. The majority of the kitchen cashier's duties do not encompass direct customer service.

3

25. As indicated on Defendant's website, the position requires the kitchen cashier to keep the till, handle financial transactions, plate and garnish orders, restock and clean the kitchen, assign cleaning and sanitation tasks, and other non-customer service-oriented duties.

26. The only duty that does require customer service is the taking of food orders and notifying the customer that their food order is ready with a buzzer.

27. And, because the main attraction at Red Bear is the alcohol, food orders are minimal.

28. On a weekday, a kitchen cashier may only take food orders from a handful guests.

29. Guests also cannot make drink orders with the kitchen cashiers.

30. In performing these duties, kitchen cashiers seldom, if ever, receive tips and gratuities from customers.

31. Indeed, the tip jar near the cash register almost always remains empty.

32. Bartenders, in comparison, individually receive hundreds of dollars in tips each shift and have constant interaction with customers, whether it is through taking orders, preparing and serving alcoholic and non-alcoholic beverages directly to the guests, bussing the tables and bars to maintain a clean "front of the house," and regularly conversing with the guests.

**Bartenders Began Working as Managers on Duty, But Were Not**
**Paid For Their Tipped Work**

33. Beginning in the fall 2019, Defendant required some of the bartenders, including Plaintiff, to work one shift per week as the Manager on Duty ("MOD").

34. Defendant paid MODs $15.00 per hour.

35. MODs perform tipped and non-tipped duties.

36. The tipped duties occupied over 50% of the MODs time.

37. MODs also acted as bartenders and had significant client interactions. As an MOD, Plaintiff

4

performed several tipped duties, such as serving and mixing drinks, greeting and socializing with guests, and bussing the bar and tables. While performing this work, customers regularly tipped Plaintiff.

38. MODs non-tipped duties include, but are not limited to, ensuring the brewery was ready for opening each morning, running the floor, ensuring staff took their scheduled breaks, printing daily financial reports, splitting the tips at the end of each shift, and inputting the daily financial numbers into spreadsheets.

39. Plaintiff never received her earned tips for this work. Instead, Red Bear used Plaintiff's tips to distribute to other employees into its invalid tip pool.

### Defendant Violated the DCMWA by Retaining 8% of the Bartenders' Tips From A Work Event

40. On December 7, 2019, a private company rented out the restaurant for a party.

41. Defendant charged the company a $10,000 buyout for the food, service, venue, and drinks, and an 18% gratuity for the services provided (totaling approximately $1,800 in tips).

42. Despite this, Defendant paid the tipped employees only $1,000.

43. Upon information and belief, Defendant kept the remaining 8% from the gratuities and used it to cover food and beverage fees for the event.

### Plaintiff Participated in a Protected Activity by Complaining About Defendant's Improper Tip Allocation from the December 7, 2019 Work Event

44. On December 10, 2019, Plaintiff sent an email to Bryan Van Den Oever (Founder and Director of Business Development and Marketing), Cameron Raspet (Director of Operations), David Kuan-Celarier (Kitchen Manager), Ms. Cox, and Simon Bee (Director of Brewery Operations) expressing her concerns about Defendant's allocation of the tips from the event earlier that month, stating that the "figures for Saturday" were not "adding up."

5

45. Mr. Raspet responded, stating that the tips were correctly allocated and that the 8% was spent to cover a "food and drink fee."

### Plaintiff Participated in a Protected Activity When She Communicated With Ms. Cox Regarding Defendant's Tip Sharing Policy

46. Between December 12 and 19, 2019, Plaintiff spoke with Ms. Cox at least twice about her concerns referenced in the December 10, 2019 email to Defendant.

47. Plaintiff also articulated how she felt that the kitchen cashiers should not be tipped out as they have limited customer interaction and do not perform tipped duties.

48. In response, Ms. Cox expressed that she thought Plaintiff was attempting to make her look bad, but she would speak with Mr. Raspet and get back to Plaintiff – she never did.

### Ms. Cox Reduces Plaintiff's Schedule

49. Following Plaintiff's protected activities, Ms. Cox negatively altered Plaintiff's schedule.

50. Ms. Cox decreased Plaintiff's bartender shifts to four to five shifts per week (instead of the usual five to six), while increasing Plaintiff's MOD shifts to three days per week, thus inhibiting her ability to earn a higher income through tips.

51. On the other hand, Plaintiff's co-workers continued to receive their regular amount of bartender and MOD shifts.

### Defendant Violated the DCMWA by Allocating Tips to Dishwashers/Bussers

52. On December 21, 2019, Mr. Raspet updated the tip sharing policy to allocate 3% of the tips to the dishwashers/bussers.

53. However, dishwashers/bussers should not have been classified as tipped employees.

54. The dishwasher/busser spends the majority, if not all, of its time in the kitchen washing dishes, cleaning kitchen tools, maintaining kitchen cleanliness, collecting dishes from the tap room,

and restocking kitchen space.

55. Though the official title of the position is "dishwasher/busser," the actual practice of the position's duties does not require performing the traditional duties of a busser, which is traditionally a legally tipped position.

56. Rather, the bartenders and barbacks bus the tables, taproom, and bar.

57. The only time the dishwashers/bussers enter the "front of the house" is to collect the dishes the bar bussed – not to bus tables, the bar, or the taproom.

58. These duties are fulfilled with no customer interaction, no direct customer service, and without receipt of tips or gratuities from customers.

**Bartenders Communicated Their Concerns about Defendant's Illicit Tip-sharing Policy to the Kitchen Manager**

59. On January 14, 2020, Plaintiff and two other bartenders spoke about how they felt the dishwashers/bussers and kitchen cashiers should not be in the tip pool.

60. One of those bartenders (not Plaintiff), then spoke with Mr. Kuan-Celarier, Kitchen Manager, about how Plaintiff, himself, and the other bartenders felt the dishwashers/bussers and kitchen cashiers should not be in the tip pool.

61. Mr. Kuan-Celarier agreed with their sentiments and informed them that he would speak with management about the issue.

**Plaintiff Participated in a Protected Activity by Complaining About Defendant's Retaliatory Actions to Ms. Cox**

62. On January 17, 2020, after the end of a shift in which Ms. Cox aggressively demanded Plaintiff wear a Red Bear logo without reprimanding other bartenders who did not, Plaintiff met with Ms. Cox and explained that she felt Ms. Cox had taken retaliatory actions against her since their conversations about tip allocations.

7

63. Plaintiff began to cry and asked if there was something she could do to fix this problem.

64. Ms. Cox shrugged her shoulders and said she "would think about it."

65. On January 18, 2020, Plaintiff sent an email to Mr. Raspet, Mr. Van Den Oever, and Mr. Bee where she again expressed that her supervisor subjected her to retaliation.

**Defendant Fired Plaintiff**

66. On January 21, 2020, Ms. Cox emailed Plaintiff, informing her that she wanted to meet with her, Mr. Raspet, and Tyson McDonald the next day.

67. On January 22, 2020, Ms. Cox fired Plaintiff for "performance" issues.

68. Ms. Cox claimed that Plaintiff, on January 10, 2020, spoke rudely to a co-worker, Laurel, in front of a guest and that on January 6, 2020, Plaintiff inappropriately complained about another bartender, Sergio, to staff members.

69. These claims are false or exaggerated.

70. On January 10, 2020, Plaintiff spoke with Laurel a few minutes after she was supposedly rude.

71. Laurel was not upset with Plaintiff and did not indicate she believed Plaintiff had said anything inappropriate or rude.

72. Plaintiff's January 6, 2020 complaint about Sergio was not inappropriate or reflective of poor performance.

73. When Plaintiff was the scheduled MOD on January 6, Sergio yelled at Plaintiff after she asked him to stop using his cell phone in front of customers.

74. Sergio had this type of infraction before and was a topic of concern in MOD meetings.

75. Plaintiff also asked him several times prior to stop using his cell phone.

76. Subsequently, Plaintiff spoke with Jeremy, MOD and bartender, in a non-disparaging manner about the issue.

77. Plaintiff's actions as MOD were appropriate.

78. Defendant used these "performance" issues as an excuse to fire Plaintiff for her complaints of wage violations.

## COLLECTIVE ACTION ALLEGATIONS

79. This action is maintainable as an opt-in collective action pursuant to D.C. Code § 32-1308.

80. Plaintiff brings her claims on her own behalf and on behalf of all similarly situated employees, past and present, to whom Defendant improperly failed to pay tips owed, and on behalf of all similarly situated employees, past and present, who not paid minimum wage because Defendant took an improper tip credit.

81. Plaintiff hereby consents to be a Plaintiff in this action.

## JURY DEMAND

82. Plaintiff demands a trial by jury.

## COUNT 1
## FAILURE TO PAY TIPPED WAGES UNDER THE DCMWA
### (D.C. Code § 32-1001, *et seq.*)

83. Plaintiff repeats and realleges the foregoing allegations as if each were fully set forth herein.

84. Defendant was Plaintiff's employer within the meaning of the DCMWA.

85. The DCMWA requires that all gratuities received by the employee to be retained by the employee, unless the gratuities are shared among employees who customarily receive gratuities. D.C. Code § 32-1003(g)(3).

86. Defendants violated the DCMWA by knowingly paying tips to dishwashers/bussers and kitchen cashiers, whose duties are principally non-tipped, have minimum client interaction, and do not customarily receive gratuities.

87. Defendant also violated the DCMWA when it retained Plaintiff's earned tips for overhead

9

costs.

88. Defendant further violated the DCMWA by retaining tips owed to Plaintiff when she worked as a MOD and distributing those tips to other employees.

89. Defendant's violations of the DCMWA were willful and not in good faith.

90. Defendant did not have reasonable grounds to believe that its failure to pay Plaintiff all tipped wages to which she was entitled was not a violation of the DCMWA.

91. Defendant failed to promptly pay Plaintiff the full amount of wages owed to her under the DCMWA.

92. For Defendant's violations of the DCMWA, Defendant is liable to Plaintiff for unpaid wages, statutory penalties, liquidated damages in an amount equal to three times Plaintiff's unpaid wages, court costs, reasonable attorney's fees and expenses, interest, reinstatement, and any other relief deemed appropriate by the Court. D.C. Code § 32-1012.

## COUNT 2
## FAILURE TO PAY MINIMUM WAGES UNDER THE DCMWA
### (D.C. Code § 32-1001, *et seq.*)

93. Plaintiff repeats and realleges the foregoing allegations as if each were fully set forth herein.

94. Defendant was Plaintiff's employer within the meaning of the DCMWA.

95. From the beginning of Plaintiff's employment until June 30, 2019, the minimum wage required under the DCMWA was $13.25.  D.C. Code § 32-1003(a)(5)(A)(iii).

96. From July 1, 2019 until the termination of Plaintiff's employment, the minimum wage required under the DCMWA was $14.00.  D.C. Code § 32-1003(a)(5)(A)(iv).

97. For her work as a bartender, Defendant paid Plaintiff a base wage of $9.00 an hour plus tips, distributed in a mandatory tipping pool.

98. Defendant was only entitled to take a tip credit to supplement Plaintiff's base wage of $9.00

if its tip pool consisted exclusively of employees who customarily receive gratuities.

99. Defendant was not entitled to take a tip credit to supplement Plaintiff's base wage of $9.00 because Defendant's tip pool included dishwashers/bussers and kitchen cashiers.

100. Defendant's violations of the DCMWA were willful and not in good faith.

101. Defendant did not have reasonable grounds to believe that its failure to pay Plaintiff all tipped wages to which she was entitled was not a violation of the DCMWA.

102. Defendant failed to promptly pay Plaintiff the full amount of wages owed to her under the DCMWA.

103. For Defendant's violations of the DCMWA, Defendant is liable to Plaintiff for unpaid wages, statutory penalties, liquidated damages in an amount equal to three times Plaintiff's unpaid wages, court costs, reasonable attorney's fees and expenses, interest, reinstatement, and any other relief deemed appropriate by the Court. D.C. Code § 32-1012.

## COUNT 3
## RETALIATION IN VIOLATION OF THE FLSA
### (29 U.S.C. § 201, *et seq.*)

104. Plaintiff repeats and realleges the foregoing allegations as if each were fully set forth herein.

105. Defendant is an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

106. The FLSA states that it is a violation for any person to discharge or discriminate against any employee because such employee has made a complaint under the FLSA. 29 U.S.C. § 215(a)(3).

107. Defendant violated the FLSA by disparaging, humiliating, and firing Plaintiff following her complaints of wage violations.

108. Defendant's violations of the FLSA were willful.

109. For Defendant's violations of the FLSA, Defendant is liable to Plaintiff for lost wage wages,

backpay, front pay, an equal amount as liquidated damages, court costs, reasonable attorney's

fees and expenses, interest, compensatory damages for emotional pain and suffering, and any

other relief deemed appropriate by the Court. 29 U.S.C. § 216.

**COUNT 4**
**RETALIATION IN VIOLATION OF THE DCMWA AND DCWPCL**
**(D.C. Code § 32-1001,** *et seq.***)**

110. Plaintiff repeats and realleges the foregoing allegations as if each were fully set forth herein

Complaint.

111. Defendant was Plaintiff's employer within the meaning of the DCMWA and DCWPCL.

112. Under the DCMWA and DCWPCL, it is unlawful for any employer to discharge, threaten,

penalize, or in any other manner discriminate or retaliate against any employee because of a

complaint made in good faith that the employer violated the DCMWA or DCWPCL. D.C.

Code §§ 32-1010(a)(3)(A), 32-1311.

113. An employer taking adverse action within 90 days of an employee's engagement in protected

activity shall raise a presumption that the action was retaliation. D.C. Code § 32-1010(b).

114. Defendant violated the DCMWA and DCWPCL by targeting, disparaging, and firing Plaintiff

following her complaints of wage violations.

115. For Defendant's violations of the DCMWA and DCWPCL, Defendant is liable to Plaintiff for

liquidated damages in an amount equal to the statutory civil penalty imposed, front pay, lost

compensation, backpay, costs, attorneys' fees, reinstatement, compensatory damages for

emotional pain and suffering, and any other relief deemed equitable and appropriate by the

Court. D.C. Code § 32-1011.01: D.C. Code § 32-1311(c).

**COUNT 5**
**FAILURE TO PAY WAGES UNDER THE DCWPCL**
**(D.C. CODE § 32-1301,** *et seq.***)**

116. Plaintiff repeats and realleges the foregoing allegations as if each were fully set forth herein Complaint.

117. Defendant was an employer of Plaintiff within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

118. The DCWPCL requires employers to pay an employee who is discharged no later than the working day following the discharge.  D.C. Code § 32-1303(1).

119. For the purposes of the DCWPCL, wages include tips. D.C. Code § 32-1301.

120. Defendant violated the DCWPCL by knowingly failing to timely pay Plaintiff her tips that was owed.

121. Defendant's violations of the DCWPCL were willful.

122. For Defendant's violations of the DCWPCL, Defendant is liable to Plaintiff for unpaid wages, liquidated damages in an amount equal to three times Plaintiff's unpaid wages, court costs, reasonable attorney's fees and expenses, interest, and any other relief deemed appropriate by the Court. D.C. Code § 32-1308.

## COUNT 6
## FAILURE TO PAY WAGES UNDER THE FLSA
### (29 U.S.C. § 201, *et seq.*)

123. Plaintiff repeats and realleges the foregoing allegations as if each were fully set forth herein Complaint.

124. Defendant is an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

125. The FLSA states that "an employer may not keep tips received by its employees for any purposes...." 29 U.S.C. § 203(m).

126. Defendant violated the FLSA by retaining tips owed to Plaintiff when she worked as an MOD,

by distributing tips to dishwashers/bussers and kitchen cashiers, and by retaining tips received

at the December 7, 2019 corporate event.

127. Defendant's violations of the FLSA were willful.

128. For Defendants' violations of the FLSA, Defendants are liable to Plaintiff for unpaid wages,

an equal amount as liquidated damages, court costs, reasonable attorney's fees and expenses,

interest, and any other relief deemed appropriate by the Court. 29 U.S.C. § 216.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendant

on all Counts and grant the following relief:

    a.  Award Plaintiff lost wages, backpay, front pay, and liquidated damages pursuant to the

        FLSA, DCMWA, and DCWPCL;

    b.  Award Plaintiff pre-judgment and post-judgment interest as permitted by law;

    c.  Award Plaintiff attorneys' fees and expenses;

    d.  Award Plaintiff court costs; and

    e.  Award any additional relief the Court deems just.

Date: November 23, 2020                     Respectfully submitted,

                                           Alan Lescht & Associates, P.C.

                                           By: /s/ J. Barrett Kelly
                                         J. Barrett Kelly (#1019475)
                                         1825 K Street NW, Suite 750
                                         Washington, D.C. 20006
                                         T: 202.463.6036
                                         F: 202.463.6067
                                         barrett.kelly@leschtlaw.com

                                         *Counsel for Plaintiff*

14